UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASEAN LYLES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 3185 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| NORTHEAST ILLINOIS REGIONAL ) | |
| COMMUTER RAILROAD CORPORATION ) | |
| d/b/a METRA and THOMAS EKVALL, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Lasean Lyles, Jr. worked for Defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra") as a watchman between 2015 and 2018. In June 2018, Metra transferred Lyles to a different facility, where Defendant Thomas Ekvall was his supervisor. In October 2018, Metra terminated Lyles after determining that Lyles violated its attendance policy. Lyles now brings the following claims against Metra: (1) hostile work environment and unlawful race discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts I and II); (2) hostile work environment in violation of 42 U.S.C. § 1981 (Count III, against Ekvall only); (3) denial of overtime rate and failure to pay all compensable time worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Counts IV and V); and (4) failure to pay all compensable time worked under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq*.

Defendants move to dismiss the first amended complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Additionally, Defendants argue that the Railway Labor Act ("RLA") preempts some of Lyles' claims, requiring dismissal under Federal

Rule of Civil Procedure 12(b)(1). Because Lyles' claims are based on independent statutes and do not implicate the interpretation of a collective bargaining agreement ("CBA"), the Court concludes that the RLA does not preclude or preempt Lyles' claims. Additionally, the Court finds that Lyles' hostile work environment claims are reasonably related to his EEOC charge and could plausibly amount to violations of the relevant statutes. Finally, Lyles has voluntarily withdrawn his FLSA claims (Counts IV and V), so they are no longer before the Court. Thus, the Court denies Defendants' motion to dismiss.

## BACKGROUND[1]

On June 15, 2015, Metra hired Lyles as a watchman in its Western Yard facility, where he worked until June 28, 2018, when Metra transferred him to its Fox Lake facility. At Fox Lake, Lyles' direct supervisor was Ekvall, a foreman for Metra. A collective bargaining agreement ("CBA") with the National Conference of Fireman & Oilers District Local 32 governed Lyles' employment with Metra. The CBA established requirements for when and how Metra was to handle disciplinary matters. One such provision stated that Metra must provide employees written notice of the precise disciplinary charges against them within ten days from the time that Metra had knowledge of the offenses under investigation and Metra must hold a hearing within ten days of that notice.[2] The CBA also provided that "no employee shall be

---

[1] The Court takes the facts in this section from the FAC and presumes they are true for the purpose of resolving this motion. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court also considers the additional materials submitted by Metra when considering the motion to dismiss pursuant to Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

[2] The relevant provision of the CBA states: "[T]he employee and his duly authorized representative(s) shall be apprised in writing of the precise charge(s) within ten days from the time the company has knowledge the offense(s) under investigation . . . The hearing shall be held within ten (10) days of the notice apprising the employee of the precise charge(s) against him unless it has been postponed by request of the employee, the duly authorized representative, or the company. If the hearing is not held within the specified time period, no action will be taken by the company on the Charge(s), and no notation shall be entered on the employee's record." FAC ¶ 19.

disciplined or dismissed from service . . . without a fair and impartial investigation unless such employee shall accept such discipline in writing and waive investigation." Doc. 16 ¶ 18.

Metra employees are expected to use a biometric timekeeper to clock in and out of their shifts. The biometric system at Fox Lake, however, often malfunctioned, which resulted in the system inaccurately recording Lyles' clock-in times. Although Lyles brought these issues to Ekvall's attention, Ekvall regularly reprimanded Lyles for clocking in late to his shift or failing to clock in at all. Metra also issued written reprimands to Lyles regarding his clock-in times, which he claims ultimately led to his termination. Lyles alleges that Ekvall engaged in hostile conduct because Lyles is African American. Ekvall also allegedly enlisted the help of other, non-African American employees to confirm whether Lyles arrived to work on time. Because of the issues with clocking in, Lyles requested a schedule adjustment to allow him to better use the biometric timekeeping system and better record his clock-in times, but Metra never honored his requests. During the time period relevant to the FAC, Lyles' work schedule was 5:00 p.m. to 3:00 a.m., totaling fifty hours per week. Lyles maintains that he regularly worked in excess of fifty hours per week, but Metra never paid him an overtime rate for work weeks in excess of forty hours.

On August 30, 2018, Lyles arrived to work on time, but the timekeeping system malfunctioned and prevented him from clocking in at the proper time. On September 21, 2018, Lyles received a notice of charge scheduling a hearing for September 28, 2018. At the hearing, Metra determined that Lyles had violated its attendance policy and subsequently terminated him.

3

Lyles claims that Metra did not review video surveillance footage at the Fox Lake facility in evaluating whether Lyles arrived for his shifts on time.

On December 20, 2018, Lyles filed an EEOC charge that states Lyles "was subjected to different terms and conditions of employment, including, but not limited to, having [his] time requests denied and being disciplined." Doc. 30–1. The charge further provides that Lyles believed Metra discriminated against him because of his race. Doc. 30–1. Lyles received his "right to sue" letter on February 12, 2019 and filed this action on May 10, 2019.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Where the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.       Preclusion and Preemption Under the Railway Labor Act**

The Court will first address whether the RLA precludes or preempts Lyles' Title VII, § 1981, and IWPCA claims.  Metra contends that the RLA precludes or preempts these claims because they require the Court to interpret the controlling CBA and the Court therefore lacks jurisdiction.[3]  The RLA governs railroads and airlines and provides for the "prompt and orderly settlement" of labor disputes in these industries. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) (citing 45 U.S.C. § 151a).  The RLA requires parties to adjudicate their "so-called 'minor disputes'" through arbitration before an adjustment board established by a governing CBA. *Id.* (citation omitted).  Minor disputes grow "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n.*, 491 U.S. 299, 303 (1989) (citation omitted); *see also Carlson*, 758 F.3d at 832.

The RLA, however, does not preclude independent claims, that is, claims that cannot be "conclusively resolved" by interpreting a CBA. *Carlson*, 758 F.3d at 832 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263, 265 (1994)).  "[P]urely factual questions" about an employer's conduct or motivation do not "require[ ] a court to interpret any term of a collective-

---

[3] The parties have interchangeably used the terms "preclude" and "preempt" in their briefs.  For clarity, the Court will use "preclude" with respect to federal claims and "preempt" with respect to state law claims. *See Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 757 (7th Cir. 2008).

bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). For example, the RLA does not preclude claims involving "statutory protections against employment discrimination and retaliation." *Carlson*, 758 F.3d at 832; *see also Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 318 (7th Cir. 1994) (RLA did not preempt the plaintiff's claims because they involved "rights and obligations that exist[ed] independent of the collective bargaining agreement").

Metra argues that Lyles' Title VII, § 1981, and IWPCA claims are inextricably tied to the interpretation of the relevant CBA and are therefore precluded or preempted by the RLA. More specifically, Metra contends that Lyles' Title VII and § 1981 claims rely, in part, on the timeliness of Lyles' disciplinary notice and subsequent hearing, which are tied to the CBA. Metra similarly argues that the RLA preempts Lyles' IWPCA claim because resolution of that claim requires interpretation and application of the CBA. Lyles responds that those claims do not require interpretation of the CBA and the RLA, therefore, neither precludes nor preempts his claims.

Here, Lyles' allegations do not require interpretation of the CBA, nor do his claims arise under the CBA. Rather, Lyles asserts independent claims under federal law. In his hostile work environment claims, Lyles alleges that Ekvall harassed him about his clock-in times, despite Lyles reporting that the system was malfunctioning. And his Title VII discrimination claim contends that Lyles' race was a motivating factor in Metra's decision to terminate him. These claims are independent of the CBA. *See Carlson*, 758 F.3d at 833 (RLA did not preclude the plaintiff's Title VII claims where the complaint alleged that the company rejected her applications because of her sex and in retaliation for a protected activity); *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001) ("A claim brought under an independent federal

6

statute is precluded by the RLA only if it can be dispositively resolved through an interpretation of a CBA."). Defendants argue that Lyles' federal claims regarding the timeliness of his notice and subsequent hearing are tied to the interpretation and application of the CBA and are therefore precluded. However, Lyles only references the CBA in his claims once, in his Title VII discrimination claim. *See* Doc. 16 ¶ 52. Resolution of his discrimination claim does not substantially depend on the terms of the CBA because Lyles includes this singular reference as one of many allegations of discrimination based on race. *Compare Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 873 (7th Cir. 2011) ("[T]he mere mention of or reference to a collective bargaining agreement in the course of a lawsuit does not mean that the claim is preempted.") *and Carlson*, 758 F.3d at 833 (even if the plaintiff did not have the qualifications specified in the CBA, she would still have viable Title VII claims if the same disqualifying characteristics were overlooked for men), *with Brown*, 254 F.3d at 668 (plaintiff's claim was not independent of the CBA because interpretation of the relevant provision could dispose of the plaintiff's entire claim).

The analysis does not differ for Lyles' IWPCA claim. "A state law claim is preempted only when it asserts rights or obligations arising under a collective bargaining agreement or when its resolution is substantially dependent on the terms of the collective bargaining agreement." *Rabé*, 636 F.3d at 873. Here, Lyles' IWPCA claim asserts that Metra failed to pay Lyles for all compensable time worked. That does not call the CBA itself into dispute, nor does it assert rights or obligations arising under the CBA. Metra argues that some of Lyles' factual allegations that Metra failed to abide by terms of the CBA—facts that are more relevant to his other

claims—require application of the CBA and therefore the RLA preempts Lyles' IWPCA claim.[4] But Metra's cherry-picked allegations from the FAC are not relevant to Lyles' IWPCA claim that Metra failed to pay him for all compensable time worked.  Further, Metra fails to identify any provision of the CBA that would be relevant here or that would require application or interpretation by the Court to resolve the IWPCA claim.  Without more, the Court cannot conclude the IWPCA claim is substantially dependent on the CBA's terms.  Therefore, the RLA does not preclude or preempt Lyles' claims.

## II.     Scope of the EEOC Charge

Metra next argues that Lyles cannot bring his Title VII hostile work environment claim because it is outside of the scope of his original EEOC charge.[5]  "To be cognizable in federal court, a Title VII claim must simply be 'like or reasonably related to the allegations of the charge growing out of such allegations.'" *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015) (quoting *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  "The relevant claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals." *Id.* at 831–32 (citing *Moore v. Vital Prods.*, 631 F.3d 253, 257 (7th Cir. 2011)).  Because lawyers generally do not draft EEOC charges, courts review the scope of EEOC charges liberally, and a plaintiff need not include every fact that forms the basis of his claims. *Id.* at 831.

---

[4] Metra points to the following factual allegations in the FAC: (1) Metra failed to timely provide disciplinary notice as required by the CBA; (2) Metra excluded certain evidence during its disciplinary hearing; and (3) Metra did not adhere to the provisions established in the CBA.  Doc. 30 at 7.

[5] Metra argues in its reply brief that Lyles cannot bring a Title VII hostile work environment claim against Ekvall because Lyles fails to identify Ekvall in his EEOC charge.  Doc. 37 at 2.  The Court does not consider this argument, however, because Lyles' FAC only makes this claim against Metra, not Ekvall.

In his EEOC charge, Lyles alleged that Metra discriminated against him because of his race in violation of Title VII. Lyles contended that he was "subjected to different terms and conditions of employment, including, but not limited to, having [his] time requests denied and being disciplined." Doc. 30-1. Here, Lyles' hostile work environment claim alleges that Ekvall regularly harassed him for his clock-in times, despite the fact that Lyles had informed Ekvall that the system was not properly recording his clock-in times. Lyles also claims that Ekvall sought confirmation from non-African American employees as to whether Lyles arrived on time. Construing the charge and the complaint liberally, Lyles properly put Metra on notice of his grievances in complaining that Metra altered the terms and conditions of his employment, denied his time-related requests, and disciplined him for the same, all allegedly because of impermissible race discrimination. *See Lavalis v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (plaintiff's EEOC charge and claims described the same conduct and implicated the same individuals and were therefore reasonably related); *Huri*, 804 F.3d at 832 (plaintiff's EEOC charge that used the word "harassment" was reasonably related to a Title VII hostile work environment claim); *see also id.* at 836 (primary purpose of an EEOC charge is to give the employer notice of the grievances and a chance to settle). Accordingly, Lyles' EEOC charge provided Metra with fair notice of the basis of his claim, and it is reasonably related to his Title VII hostile work environment claim. As such, Lyles' Title VII claim falls within the scope of the EEOC charge.

### III. Hostile Work Environment Claims

Finally, Metra argues that the FAC does not include sufficient facts to state a hostile work environment claim under Title VII or § 1981. Courts apply the same framework in analyzing the elements of Title VII and § 1981 claims. *See Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th

9

Cir. 2016). To state a hostile work environment claim, Lyles must allege: (1) he was subject to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability. *Huri*, 804 F.3d at 834 (citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)).

A hostile environment claim requires that the harassment be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Whether an environment is sufficiently hostile "can be determined only by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *see also Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). At the pleadings stage, however, it is premature for a court to dismiss Title VII or § 1981 hostile work environment claims where a plaintiff has pleaded facts that could amount to violations of the relevant laws. *See Huri*, 804 F.3d at 834 (dismissal of hostile work environment claims would be premature where the plaintiff pleaded facts "that *could* have happened and which discovery can be reasonably expected to reveal") (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)); *see also E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (plaintiff alleging racial discrimination can allege employers' intent "quite generally" and still proceed beyond pleadings).

Here, Lyles pleaded facts that identify the type of discrimination, who discriminated against him, and when that discrimination occurred. Lyles alleges that he was discriminated

10

against on the basis of his race. Lyles further claims that Ekvall primarily engaged in the alleged discriminatory behavior. Finally, Lyles alleges that such discrimination occurred between June and October of 2018, during which time Ekvall "regularly harassed" him about his clock-in times and "repeatedly and continuously" issued written reprimands. Doc. 16 ¶¶ 37, 39. Lyles has pleaded sufficient facts to satisfy the pleading standard at this stage. *See Swanson*, 614 F.3d at 404 ("[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007))); *James v. Lydon*, No. 19 C 3366, 2020 WL 3192286, at *5 (N.D. Ill. June 15, 2020) ("[C]ourts in this district have tended to deny motions to dismiss where plaintiffs alleged some ongoing or repeat instances of harassment.").

 Metra's argument that Lyles has not pleaded that the alleged harassment was motivated by racial animus fails. The FAC plainly alleges that Ekvall's hostile conduct occurred because of Lyles' race. Additionally, Lyles alleges that Ekvall sought corroboration from non-African American employees as to Lyles' timeliness. *Cf. Concentra Health Servs.*, 496 F.3d at 781 ("'I was turned down for a job because of my race' is all a complaint has to say." (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998))). Drawing all inferences in Lyles' favor, Lyles has pleaded enough facts that could plausibly amount to a hostile work environment within the meaning of Title VII and § 1981. *Huri*, 804 F.3d at 834 (dismissal of the complaint was in error because the plaintiff's complaint presents a story that "holds together") (citing *Swanson*, 614 F.3d at 404); *Moses v. Sloan Valve Co.*, No. 16 C 9972, 2017 WL 3838040, at *3 (N.D. Ill. Sept. 1, 2017) (at the pleading stage, plaintiffs pleaded sufficient facts to state a hostile work environment claim where allegations included that they were accused of stealing because of their race); *Gaston v. Bd. of Ed. of the City of Chi.*, No. 17 C 1024, 2017 WL 3234375, at *3 (N.D. Ill.

11

July 31, 2017) (plaintiff stated claim for hostile work environment where her allegations included that her supervisor verbally assaulted her and sent her emails to attend baseless disciplinary meetings). Accordingly, the Court denies Defendants' motion to dismiss Lyles' hostile work environment claims.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss [30].

Dated: December 10, 2020

_____
SARA L. ELLIS
United States District Judge